Case number 251424 Darrell Chancellor v. Stephen Geelhood et al. Oral argument not to exceed 15 minutes per side. Mr. Desmond, you may proceed for the appellant. Good morning. Good morning, Your Honors. Christopher Desmond from Venn Johnson Law on behalf of the plaintiff, Darrell Chancellor. Chief Judge Sutton, I'd like to reserve three minutes for rebuttal, if possible. Your Honors, I want to start today with the issue that I think permeates so much of this appeal, which is probable cause. Essentially, well, actually, I think there are kind of two issues that are related that permeate this appeal, probable cause and credibility. Because when I look at the district court opinion and I look at the probable cause analysis in this case, essentially probable cause is built off of one thing, which is the word of Officer Geelhood in this case. We have nothing to corroborate his account of this case. We have a number of anomalies when it comes to the criminal investigation that occurred here, which have been cited by numerous authorities in this case and witnesses in this case. But there's reason to doubt Officer Geelhood's account of these events at every single stage of these proceedings, prior to the raid of Janet Chancellor's home, my client's mother, during the course of the raid and following the raid. That all call into question whether or not there was ever probable cause in this case, which is a question that should be submitted to the jury. The district court, unfortunately, essentially credited the account of Officer Geelhood and found that because Geelhood testified that it was indeed my client who was standing outside of the home, engaged in hand-to-hand drug transactions, that that was sufficient to justify the original criminal charges. But that's not in the search warrant. The question here is whether there's probable cause to, or at least the way you framed it, is whether there's probable cause to search. Whether the search warrant affidavit was falsified. The search warrant affidavit and then probable cause to arrest as well, Your Honor, but yes. Okay, we can get to the second question. The probable cause to search, the warrant affidavit never says that it was your client who Officer Geelhood saw engaged in the hand-to-hand transactions. That's correct, it doesn't. It says that there was a gentleman who was approximately 5 feet 8, 180 pounds. Yep, so where does he ever identify your client as the person engaged in the transactions? Not until after the raid of the home when he eventually... At trial? Yes, Your Honor, in a way at trial. In an odd way, he seemingly indicates that he's drawn that conclusion the moment that he's home in the raid because there are, I think, 8 different people who get mail at that home. There are 5 different people who live at the home or stay at the home. When he gets into the home, he allegedly sees one letter with my client's name on it and he doesn't talk to any of the other 8 people about these drugs. Geelhood doesn't find the letter. It's another officer who finds the letter. Right, but he immediately, Officer Geelhood, our defendant, immediately calls my client when he sees that letter and says to my client, we found your drugs in the home. Give us the names of other drug dealers or we're going to prosecute. And so he hadn't seen my client yet. He had never seen a photo of my client. He didn't know what my client looked like. What he did potentially know and what we've alleged in our brief and alleged in this complaint is he knew my client had successfully sued the city of Detroit years before for a false arrest and imprisonment against a notorious officer in the city of Detroit who I believe is currently incarcerated or eventually became incarcerated. So there is a history between my client and the city of Detroit's police department, which is what we believe potentially motivated this decision that otherwise has no explanation because as you noted, Your Honor, he had never seen my client at that point. He didn't know what my client looked like when he drew the conclusion that these were my client's narcotics. Okay. So may I put a pin on that and make clear because I was struggling with where in the record Gilhood first made that identification. So are we in agreement that it was not until trial or is there an earlier point in the record at which Gilhood identified Chancellor? So, Your Honor, in terms of the first time he sees his face and says to someone it was Darrell Chancellor that I saw, it's not until trial. The arrest warrant says that it's my client who engaged in these crimes. And so he's identifying my client. But Gilhood did not draft the arrest warrant, right? The arrest warrant was drafted with the assistance of Gilhood. It was from the information provided by Gilhood. Where did you allege that to the district court? I'm sorry, where did we allege? What Gilhood's involvement in securing the arrest warrant. I don't have the specific site to our complaint right now, Your Honor, because I didn't anticipate that question. But I believe it's permeated the allegations in this case, is that it was Mr. Gilhood who made the allegations that led to the raid. It was Mr. Gilhood who, when he got into the home, called our client. It was Mr. Gilhood who identified our client. It was Mr. Gilhood who was the only officer who, I think, who testified at the criminal proceedings against my client. So we've alleged throughout, I believe, that Mr. Gilhood participated in every stage, the investigation, the arrest, and the prosecution of my client. But I'm sorry, I can't point to the allegation in the complaint that says that. As it relates to this idea, by the way, of Officer Gilhood with his identification, it seems to me that sometimes what happens when we get into these cases, we caution courts all the time. We shouldn't be making credibility determinations. That's something that's reserved for a jury. So often it feels like that goes by the wayside when we're dealing with a police officer on one side saying that my client did something. Because what we do know here, and Chief Judge Sutton, it reminds me of a case that you were on years ago that I had. It was a case called Terry Greco v. Livingston County, where when you were talking about the standard of review, you invoked the Kurosawa film Rashomon for the idea that when you have two witnesses who get up, who give different accounts of the same event, you don't simply call off trial. What we have here during the course of the raid, we have a stark contrast in the description of what occurred in that home that I don't believe the district court credited at all. Mr. Gilhood says that when he came into the home and when the letter was found, first of all, Mr. Gilhood says that the letter was found on a table upstairs where the narcotics and the guns were eventually found. Janet Chancellor says that that is certainly not true, that the letter was downstairs, and that it was in an area where there was mail for several people. She also says that unlike what Mr. Gilhood says, when Gilhood says that Janet Chancellor volunteered the moment that he walked into my house, only my son Darrell lives upstairs. She says that that's simply not true. She didn't say that, and the record evidence shows that Darrell didn't even live at that home. Did you offer that fact to the district court as a reason to deny summary judgment? I know it's in your statement of facts in the district court, but when you read the argument in your motion in opposition to their motion for summary judgment, you don't say there's a genuine dispute of material fact about this claim. Like, you never say you should deny summary judgment for this reason. You're focused entirely on the search warrant. So, Your Honor, I will acknowledge there is, in the response brief below, there is a lot to be desired when it comes to the argument that was offered to the district court and the focus on the evidence. I agree with that. Okay, but we'll review the case you presented. No, no, I know, but what I will say is all of the evidence that I've cited to this court, and I admit, our brief is, I think and I hope, our brief is far more rounded on appeal than the brief that was submitted to the trial court was. But all of the evidence that our arguments are based on on appeal, that's all based on evidence that was properly given to the district court and is properly part of this record. But if you didn't argue it the right way below, that's highly irrelevant on appeal. I don't care that the facts were there. You say it's a search warrant case as opposed to a probable cause arrest case. What do you do? Well, Your Honor, I don't know that I would agree with the idea that we say that this is a search warrant case because we've certainly pled this case. I mean, our counts are false arrest, false imprisonment, malicious prosecution, where we've alleged that the city of Detroit, at every stage, there was a lacking of probable cause in this case. And so the briefing below, our arguments to the court was, yes, the search should have never occurred, but that there were misrepresentations and reckless disregard for the truth that permeated all the way through the criminal trial, which is what allows this court to disregard the bind over, disregard the findings of the neutral magistrate. So I believe we properly made these arguments below. Sure, they could have been more fleshed out, but I don't think we're bumping into sort of, for lack of a better term, because we're the appellant here, but almost like a preservation issue, right? I don't think that we're in that territory at this point. The defendants below pointed out that, with respect to your false arrest claim and your malicious prosecution claim, that you had never explained what Gilhood's role was in securing the arrest warrant or securing his prosecution. They pointed that out, and your response was just, wow, that's puzzling because we've always said that it was Chancellor who was responsible for the search warrant that set this in motion. You didn't point to any facts. You just said, wow, we're scratching our head here. So, Your Honor, I don't read the district court's opinion as saying that because there was a lack of participation from Officer Gilhood, there's no liability. What I read the district court's opinion as being was, because I find Officer Gilhood to be credible. Now, there certainly is case law from this court that talks about the need to show participation at various stages, but I think it might be, I think it might be Sykes v. Anderson that talks about, so long as someone testifies in the proceeding against someone, that is sufficient to be able to maintain a malicious prosecution cause of action. In this case, I don't think we even come... Because it's assumed that they influenced the decision to bring the prosecution? Because, of course, they're immune for the testimony. They're immune for the testimony, right, and the case law does say that as well, that you're immune if the sole basis of the malicious prosecution claim is something that you did while you were on the stand in court, then, yes, you're immune. But the continued participation of someone like a police officer or an investigator that extends from during the investigation and then continues, and, in fact, I think, and I think it's Sykes, they actually don't even talk about the trial. What they're focused about on in this circuit's case law is the preliminary exam, so long as you've even participated in that stage of the prosecution. Do we know that he participated in this? I don't believe that there was a preliminary exam in this case, Your Honor, if I remember. One quick question, then your time will be up, but I just want to make sure I'm understanding the framing. We can ignore the Fourth Amendment arguments or not ignore them? No, no, no, he can't ignore the Fourth Amendment arguments. Even though he claims not to have lived there? Oh, well, Fourth Amendment, I'm sorry, because there's a lot that falls under the Fourth Amendment. In the search warrant. Right, in terms of an unlawful entry, yeah, I don't think, he doesn't have any claim for damages, for example, Your Honor, because his residence was unlawfully entered. His damages that flow from the unconstitutional search are the ultimate incarceration that occur because that unconstitutional search of someone else's home. But yes, he doesn't live there, so he doesn't have a property interest in that home for purposes of an unlawful entry. All right, you'll get your full rebuttal. Thank you, Your Honors, I appreciate it. Good morning, Your Honors. Josephine DeLorenzo on behalf of defendant. We're asking that you affirm the district court's order granting summary judgment to Officer Gealhood. As to the federal claims, this case does seem to arise out of the search warrant, even though there is no illegal search claim, but there was probable cause for the search. Plaintiff's briefing emphasized that there is no document or testimony from Gealhood identifying the confidential informant, but the case law focuses on whether there's evidence of the informant's knowledge and reliability, which is included in the affidavit here. And even if that information wasn't in the affidavit regarding the confidential informant, it wouldn't undermine the finding of probable cause to search because Gealhood independently surveilled that residence and he corroborated the information. And then, of course, after the search warrant was executed, there was probable cause to arrest, imprison, and prosecute plaintiff. What role did Officer Gealhood, from your perspective, have in the arrest? Well, my first point was going to be that he didn't prepare or swear to an arrest warrant, and he wasn't the one who arrested plaintiff, so he didn't have a role. It was Sergeant Corey Carson who prepared the investigator's report, and that's what sought the warrant for plaintiff's arrest. And then somebody else actually arrested the plaintiff during a traffic stop. I would say that some of the information that Sergeant Carson included in the investigator's report did come from Officer Gealhood, and that's the preliminary complaint record, so that's R50-5. But that has information from all the officers that were part of the raid, not just Gealhood. And that's where Gealhood said that Janet Chancellor told the officers that her son Darrell is the only one that lives upstairs. Then he talked about the state police canine pointing to the laundry hamper, and he removed the clothes, and that's where it was all male clothing. He noted that, and that's where he recovered the cocaine. And there was information from the other officers, so that contributed to the finding of probable cause. That's all in the preliminary complaint record. There was a lean search that indicated that plaintiff was registered at that address. And then, of course, the raid uncovered the proof of residence for the plaintiffs. It was a letter from the Michigan Department of Treasury. Did the plaintiff reference the preliminary complaint record or the investigative report in its motion to the district court at all? Well, it was in the response, because it was in our, I believe it was in our motion, but I don't think, I don't remember if they discussed it or not. Yes, it would have been in our motion, because it was an exhibit, that complaint record. So that was all sufficient to arrest and prosecute plaintiff for possession. So for all those reasons, the district court's ruling as to the false arrest, false imprisonment, and malicious prosecution claims fail as a matter of law. If they wanted to overcome this or to deny qualified immunity, they had to show that Geale had knowingly and intentionally or recklessly omitted or misrepresented material exculpatory information in either the affidavit or the information that he provided to the prosecutor. So we're relying on the case law from this court that there has to be more than just factual inaccuracy. There has to be the evidence going to knowledge or state of mind. And there is no evidence here. So plaintiff's position is just basically accusing Officer Geale Hood of lying about essentially everything. But their evidence is just statements and opinions from people who contradict what Officer Geale Hood said. Is there a dispute of material fact over what Janet Chancellor told Geale Hood about where Daryl Chancellor lived? After the fact, yes, they do say that. What do you mean by after the fact? Well, is there in this case a dispute of material fact over what Janet Chancellor told Geale Hood about Daryl living in the home? In this case, yes, they're basically contradicting everything. So, yes, that's one of their points. Wait, you're admitting that there's a dispute of material fact over this issue? There's not evidence in place before the arrest, though. Correct. I guess it's not material in this case because what they need to show, the law from this court, we're relying on Butler v. Detroit, is this kind of evidence doesn't create, it's not material. Yes, they're saying it's not true, but you had to look, that's not the kind of evidence to allow him to succeed on these claims. He has to show that the officer had something in his possession at that time. He knew of or possessed information that contradicted now these sworn assertions that are coming afterwards. So in Butler, it was the same kind of thing. Someone had an affidavit, well, I didn't, you know, no one was at my house, or I didn't say that. So it's the same as her saying, oh, well, I never said that. She did admit, actually, though, that there was a phone call. He did call Daryl from the scene. But what he has to show, what matters for this case, is he has to show that Officer Gilhood had some kind of information. So the kind of information was in Butler, this court pointed to another case, which was King v. Harwood. And that's where the officer had something like a ballistics report that contradicted everything. He actually had some kind of evidence that was against what he was saying. And that's not what we have here. So I don't think that makes a material question of fact here. Can I ask you a slightly different question? Did you raise a statute of limitations defense? Because it seems to me that the false arrest claim is probably not timely, but I didn't see that you raised it. I don't believe that was raised in the district court. Okay, it's just a 13-year late claim. I guess, I mean... But you didn't raise it. I didn't raise it, so I won't make up an answer because we didn't raise it. Thank you. They have another argument about he's not entitled to qualified immunity because he was incompetent. Because of his alleged failure to properly document the investigation. But I think that the case they relied on for that was different. That was Hart v. Michigan where the violations of policy had to do with the use of deadly force, potentially deadly force. And the question that... Well, do those claims have something to do with the veracity of Officer Gale Hood? Isn't that the issue that they're getting to? Is that Officer Gale Hood is belatedly saying, or he's saying I surveilled, but he has nothing that would be normative in a surveillance situation. No indication or setup or information documentary about having engaged in surveillance. No information about the CI other than, I think it's fair to say, a claim that that person had been used before. But nothing about what he saw in the surveillance. Nothing about how long he was there. Nothing that is the normal documentary information that a police officer would maintain in doing his work. Well, I don't know what those documents would be. His deposition, he maybe talked about taking notes again, I guess, from a long time ago. But I would say there is documentary evidence because he wrote it out in an affidavit and he swore to it in front of the magistrate. Are you talking about the search warrant affidavit? Correct, yes. We're talking about part of that issue is whether there is veracity in what the officer is arguing based on what his records show, right? Well, he is responsible for the search warrant, but as we were talking earlier, he didn't do the preliminary complaint record or swear to the arrest warrant. So his documentation is going to be the affidavit for the search warrant. And I guess I would also just say about the confidential informant, there isn't a record on that because it's a confidential informant. And there was some testimony in the depositions that there is a difference between a confidential informant who wants to remain confidential versus a source of information, which is another type of person that they use, and that's a person that can get paid. So that has to be tracked because they're paying their sources of information. Is there any dispute of material fact that arises from the deposition testimony of Newman, who is in the unit, the CUI unit, that resulted in the exoneration? I don't believe that she creates a question of fact by just saying that it's her opinion that there was no probable cause or that he's a liar or anything like that. Because, again, the kind of evidence that they need to show to establish their claims is that it has to go to his state of mind. And they have to show that he had something like a ballistics report or he actually knew that somebody else stole the drugs. That's the kind of information they have to show. They don't have anything like that, so there isn't any evidence to create a question of fact. It's just people's opinions or actually accusations that he's lying. And the fact that he was investigated in another case or another officer was convicted of wrongdoing for lying, that's not the evidence that's in this case. So I would say there is no question of fact based on Ms. Newman's testimony. And since you didn't get into the state claims, I can rely on my brief for that unless you have any questions. No, thank you. Okay, thank you. Thank you, Your Honors. Judge Strange, I want to get really quickly into what you were asking regarding Ms. Newman's testimony. I think that it does create genuine issues of material fact. Because I think that what Val Newman does in her testimony, you know, she's sort of been attacked a little bit in the briefing in this case. And her opinion has been written off as why do we care about what one person thinks about Gilhood's credibility. The thing that I think about that's so fascinating about Ms. Newman's testimony is how informed it is. It's not her simply saying, you know what, Gilhood doesn't seem trustworthy to me. One of the very first things that she says is the home in question that was raided here, it was positioned in a neighborhood that was controlled by the Johnson family. That is nowhere in the district court record. Like, you did not argue about the Johnson family to the district court. And we are reviewing the case you brought to the district court. Well, I understand, Your Honor. The record, again, the record that we rely on here was the record that was in front of the district court. Thank you. It potentially should have been highlighted more. I agree with that. I agree with that. But I do think, Your Honor, I understand. But I do think at the end of the day, this is a situation where we have a man who was falsely in prison for eight years and was facing 22 more. And there's real indications in this record that this officer lied. And that isn't something. Also, on the Johnson claim, as I recall Val Newman's testimony, she says, like, it's brought up. They ask about the Johnson family. And then she says, well, yeah, but we didn't really look into that very much. It was sort of we heard this from somebody and we didn't really pursue that. Okay. That's not my recollection at all, Your Honor. My recollection. My recollection. Okay. My recollection of her testimony regarding that point was that Officer Gilhood's account of hand-to-hand drug sales occurring at that address immediately struck her as not being believable because that neighborhood is controlled by the Johnson Narcotics Organization that if you are not a member of that family, which he admittedly is not, you are not permitted to sell in that neighborhood, especially with that kind of weight. The other thing that we know about this confidential informant, this idea, it boggles my mind when I hear the city argue over and over and over, oh, it's okay, it's a confidential informant because our policy says as long as we don't pay them, they can remain confidential. Well, what of the judge who needs to be able to say, Officer Gilhood, why did you go into that home? Gilhood, and Internal Affairs says this in the report that was given to the district court, Internal Affairs says we have zero evidence a confidential informant even existed in this case. There's no name of anybody. There's no history of how he worked with him. And what Gilhood says in his deposition, he says when I described him in the affidavit, I said this is someone who has given me reliable information three times in the past. He admits in his deposition, I don't know who the person was, and that three times or more language is the magic language that we put into our affidavits because we know that we need to have used them at least three times in order to get the prosecutor to sign off. So these are officers who have been told, and we know the history of this department, and it's a very troubling one, and it's the very unit that this officer was in. We know that they have a history of making up confidential informants, of raiding homes and planting drugs because you're well past your time. I understand, Your Honor. The last point that I want to make very quickly before I leave, Judge Strange said all the normal things that we see in an investigation aren't present here. That's correct. The other thing that's correct is there's an abnormal thing that we don't typically see in investigations that we do see here, which is a policy from the city of Detroit that's uncontested, that if you work overtime by surveilling a home like Gilhood claimed he did in this case, you don't get paid for that overtime if you don't raid that house and come out with drugs. So they've incentivized officers. Come out of homes with drugs, and that's what occurred in this case, Your Honors. I think there's a genuine issue of material fact. Thank you. Thanks to both of you for your helpful briefs and arguments. We appreciate it. The case will be submitted, and the clerk may call the next case.